[Crim. No. 1031.   Second Appellate District, Division One.—March 27, 1924.]

## THE PEOPLE, Appellant, v. O. D. HADLEY, Respondent.

[1] CRIMINAL LAW—CONSTRUCTION OF INFORMATION—DEMURRER.—For the purpose of ruling upon a demurrer to an information, the material and issuable facts alleged in the information, which facts are well pleaded without inconsistency therein, or conclusions of law thereon, and which are not contrary to facts of which the court may take judicial notice, are to be taken as true.

[2] RAILROAD COMMISSION—FINDINGS—REVIEW OF ORDERS.—Where the Railroad Commission institutes an investigation into the "methods, practices and operations" of a person with reference to his conduct of a certain automobile stage line and, after regular proceedings had thereon, finds that said person discontinued service and operation in a given year and that he did not resume operations until a specified later date, such findings are final and not subject to review in a subsequent proceeding in which said person is charged with violating the order of the commission.

[3] ID.—RIGHT TO OPERATE STAGE LINE—JURISDICTION OF COMMISSION TO TERMINATE.—The fact that, at the time the so-called Auto Stage and Truck Transportation Act (Stats. 1917, c. 213) became effective, defendant was in the lawful possession of the right to operate stages over the route in question, did not divest the Railroad Commission of jurisdiction to order cessation of such operation.

[4] ID.—REVIEW OF ORDERS—JURISDICTION.—No court other than the supreme court has jurisdiction to review, reverse, correct, or annul any decision or order of the Railroad Commission; and even though an order by the Railroad Commission be palpably erroneous in point of law, until some order by the supreme court may be issued to the contrary, the original order of the commission must stand as a proper and legal order in the premises.

[5] ID.—DENIAL OF WRIT—ABSENCE OF OPINION—FINAL ORDER.—An order by the supreme court denying an application for a writ of *certiorari* to review an order of the Railroad Commission is a final adjudication of the correctness and the validity of the decision of the Railroad Commission, even though such order of the supreme court is not accompanied by an opinion—merely the formal order "petition denied" being entered in the record.

[6] ID.—OPERATION ON PUBLIC HIGHWAYS FOR COMPENSATION — FINDINGS.—A finding by the Railroad Commission "that the operation now being conducted by respondent . . . its operation as a trans-

4.   See 4 **Cal. Jur.** 842.

portation company as defined in Chapter 213, Statutes of 1917, and amendments thereto," constitutes a sufficient finding that the stages of respondent were being operated for compensation on the public highways of the state.

[7] ID.—JURISDICTION TO MAKE ORDER—PLEADING.—An information charging a violation of an order of the Railroad Commission is not defective because it fails to allege that the order of the commission was "duly given or made," where such information, in pleading the determination by the commission, sets forth the facts conferring the jurisdiction, rather than adopting the shorter procedure of pleading.

[8] ID.—OPERATION FOR COMPENSATION — PLEADING. — In such prosecution, an allegation in the information that the stages of defendant were operated for compensation is not a conclusion of law; neither is it indefinite and uncertain as to what is meant by the word "compensation."

[9] ID.—SERVICE OF ORDER—PLEADING—JURISDICTION.—In a prosecution for a violation of an order of the Railroad Commission, an allegation in the information that a certified copy of the order was served upon defendant prior to the date of his alleged disobedience of such order is absolutely essential to the maintenance of the action against him; and without proof of such service the court is without jurisdiction.

---

(1) 31 **C. J.,** p. 821, sec. 407.    (2) 10 **C. J.,** p. 650, sec. 1069 (1926 Anno.).    (3) 10 **C. J.,** p. 649, sec. 1069.    (4) 10 **C. J.,** p. 650, sec. 1069 (1926 Anno.).    (5) 10 **C. J.,** p. 650, sec. 1069.    (6) 10 **C. J.,** p. 650, sec. 1069 (1926 Anno.).    (7) 10 **C. J.,** p. 650, sec. 1069 (1926 Anno.).    (8) 10 **C. J.,** p. 650, sec. 1069 (1926 Anno.). (9) 10 **C. J.,** p. 650, sec. 1069 (1926 Anno.).

APPEAL from a judgment of the Superior Court of Imperial County. M. W. Conkling, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Erwin W. Widney, Deputy Attorney-General, and Ernest R. Utley, District Attorney, for Appellant.

Robert G. Hill for Respondent.

Hugh Gordon and Carl I. Wheat, as *Amici Curiae.*

HOUSER, J.—This is an appeal by the people of the state of California from a judgment in favor of defendant on a

demurrer to an information which charged defendant with the violation of an order of the Railroad Commission of this state.

An examination of the information herein discloses that the facts alleged, material to a decision of the questions which this court is called upon to decide, in substance, are: That prior to May 1, 1917, defendant was operating a certain automobile stage line in this state and within the county of Imperial; that thereafter and within the following year he ceased to operate said stage line, and that he did not again resume such operations until some time in the month of March, 1923; that on the ninth day of April, 1923, the Railroad Commission of the state of California instituted an investigation into the "methods, practices and operations" of defendant with reference to his conduct of said stage line and, after regular proceedings had thereon, made the finding that defendant had been operating his stage line "as a transportation company as defined in Chapter 213, Statutes of 1917, and amendments thereto, and for which no certificate of public convenience and necessity has been obtained from this Commission as required by Section 5 of the above-mentioned statutory enactment. That this respondent discontinued service and operation . . . in March, 1918, without having requested or received from this Commission authority so to do." That thereupon the Railroad Commission ordered that defendant cease such operation and that operation be not resumed by defendant until he was granted permission so to do by the Railroad Commission; of which ruling the secretary of the commission was ordered to serve a certified copy thereof by registered mail upon defendant. That thereafter, to wit, on or about the thirteenth day of June, 1923, defendant resumed the operation "of automobile stages for carriage of passengers for compensation over regular routes and between fixed termini on the public highways, . . . contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the people of the state of California."

A petition for rehearing herein having been granted, the court adopts as its opinion at this time that part of its former opinion which follows herein in quotation marks:

[1] "It is a rule of law that, for the purpose of ruling upon a demurrer to an information, the material and issuable facts alleged in the information, which facts are well pleaded without inconsistency therein or conclusions of law thereon, and which are not contrary to facts of which the court may take judicial notice, are to be taken as true.

"The demurrer to the information, with exception of one paragraph thereof, was substantially in the language of the statute, which prescribes the grounds upon which a demurrer to an information may be interposed; that is to say, the attention of neither the court nor the people was directed to any particular defect in the information, but the entire objection of defendant was permitted to rest upon the general language of the · statute. In the brief presentéd by counsel for respondent the following appears· with reference to the points raised herein: 'There are six separate and distinct propositions of law first discussed herein, none of which was ever presented in the petition for the writ of review *or presented in any court.*' In the case of *People* v. *Bradbury,* 155 Cal. 813 [103 Pac. 215] (in which case, however, defendant was the appealing party) it is said: 'That the court may be enlightened upon the precise matter on which error is predicated, we think too plain to call for discussion. . . . Defendant, therefore, may not be permitted here in this court and for the first time to urge this ground of special objection, never presented to the trial court.' The opinion of the judge of the lower court rendered on the decision of the demurrer, shows that the only point which was relied upon by defendant on the argument of the demurrer was included in the fifth paragraph thereof, which was to the effect that the order of the railroad commission upon which the information is based is null and void because of lack of power from any source to make such an order. Indeed, the brief of defendant herein, while purporting to specify various defects in the proceedings leading up to the rendition of the order, in effect is but an ultimate attack upon powers assumed by the railroad commission and which, according to defendant's contention, have no existence as a matter of law.

[2] "As heretofore stated, the commission's findings of facts were that respondent discontinued service and operation in the year 1918, and that he did not resume operations

until some time in the month of March, 1923. The supreme court of this state has repeatedly held, in accordance with the provisions of sections 1 and 67 of the Public Utilities Act (Stats. 1911 [Ex. Sess.], p. 18), that the findings of the commission on questions of fact are final and not subject to review. (*Oro Electric Corp.* v. *Railroad Com.*, 169 Cal. 466 [147 Pac. 118]; *Clemmons* v. *Railroad Com.*, 173 Cal. 254 [159 Pac. 713]; *San Leandro* v. *Railroad Com.*, 183 Cal. 229 [191 Pac. 1]; *Live Oak Water Users Assn.* v. *Railroad Com.*, 192 Cal. 132 [219 Pac. 65]; *Motor Transit Co.* v. *Railroad Com.*, 189 Cal. 573 [209 Pac. 586].) There can be no question, therefore, but that the finding by the railroad commission as to the abandonment of the right to operate a stage line and the fact that operations were not resumed until some time in the month of March, 1923, must be accepted as final; such conclusion being one that cannot be inquired into by this court.

[3] "It is urged that because on May 10, 1917, when the statute particularly herein involved became effective, defendant was in the lawful possession of the right to operate stages over the route in question, such right was vested, and that the commission had no jurisdiction to order the cessation of such operation. But, as is pointed out by Mr. Justice Sloss in his opinion in the case of *Oro Electric Corp.* v. *Railroad Com.*, 169 Cal. 475 [147 Pac. 118], an abstract right may exist in a corporation to engage in a business falling within the provisions of the Public Utility Act; nevertheless, in the absence of a determination by the railroad commission, as manifested by its certificate, to the effect that the rights and interests of the general public will be advanced by the prosecution of the proposed enterprise, the corporation may not lawfully exercise such right. That the order by the railroad commission was purely regulatory and was expressly authorized by a constitutional provision of the so-called Auto Stage and Truck Transportation Act is clearly made to appear by the ruling of the supreme court of this state in the case of *Motor Transit Co.* v. *Railroad Com.*, 189 Cal. 573 [209 Pac. 586].

[4] "It is contended by appellant that the superior court erred in assuming jurisdiction to declare that the order of the railroad commission was invalid. Section 67 of the Public Utilities Act provides, in part, that 'no courts of

this state (except the Supreme Court to the extent herein specified) shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties.'

"In the case of *Pacific Telephone & Telegraph Co.* v. *Eshleman,* 166 Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119], also in the case of *Sexton* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 173 Cal. 760 [161 Pac. 748], the constitutionality of the section just quoted is upheld by the Supreme Court. It must therefore be accepted as the settled law of this state that no court other than the Supreme Court has jurisdiction to review, reverse, correct or annul any decision or order of the railroad commission. Even though the order by the railroad commission be palpably erroneous in point of law, until some order by the Supreme Court may be issued to the contrary, the original order of the commission must stand as a proper and legal order in the premises. No court, other than the Supreme Court, may lawfully disregard it. Such being the state of the law, it would follow that, as is provided by the act itself, the only relief which the aggrieved party may have from such an order is by or through a writ issued by the Supreme Court. [5] In the instant case it appears that an application for a writ of review was presented by the defendant to the Supreme Court and was by that court denied by an order dated August 23, 1923, which was after the date when the demurrer to the information herein was sustained. The order denying the application for the writ of review was not accompanied by an opinion—merely the formal order 'petition denied' being entered in the record. That such an order is a final adjudication of the correctness and the validity of the decision which it is attempted to have reviewed is decided in the case of *Napa Valley Electric Co.* v. *Railroad Commission of California,* decided by the United States Supreme Court and reported in 251 U. S. 366 [64 L. Ed. 310, 40 Sup. Ct. Rep. 174], where the court cited several authorities and in the course of the opinion said: 'In those cases (referring to cases cited) the applications for writs of *certiorari* were denied, which was tantamount to a decision of the court that the orders and decisions

of the Commission did not exceed its authority or violate any right of the several petitioners under the Constitution of the United States or of the State of California. And so with the denial of the petition of the Electric Company— it had like effect and was the exercise of the judicial powers of the court. . . . And we agree with the district court that "the denial of the petition was necessarily a final judicial determination based on the identical rights" asserted in that court and repeated here. (*Williams* v. *Bruffy,* 102 U. S. 248, 255 [26 L. Ed. 135, 137, see, also, Rose's U. S. Notes].) And further, to quote from the district court, "Such a determination is as effectual as an estoppel as would have been a formal judgment upon issues of fact" (citing cases).

" 'The court held, and we concur, that absence of an opinion by the Supreme Court did not affect the quality of its decision or detract from its efficacy as a judgment upon the questions presented, and its subsequent conclusive effect upon the rights of the Electric Company.'

"The case was originally heard in the federal district court (257 Fed. 197), where Mr. Justice Van Fleet, speaking for the court, said: 'I am unable to perceive how the objection that the action of the state court is conclusive of the controversy, and that plaintiff is now precluded from bringing the same grievance here, may be avoided. It has had its day in court. . . . The contention by plaintiff that the ruling of the state court is not a proper predicate for invoking the doctrine of *res judicata,* in that it is not a judgment "on the merits," but purely a negative determination or refusal to assume jurisdiction, is unsound. We are bound to assume, if we accept the averments of the bill, that the petition put that court in full and complete possession of all the facts upon which it relies here (*Detroit & Mackinac R. Co.* v. *Michigan Railroad Com.*) ; and, that being true, the denial of the petition was necessarily a final judicial determination (*Williams* v. *Bruffy, supra*), based on the identical rights asserted in this court, and it was between the same parties. Such a determination is as effectual as an estoppel as would have been a formal judgment upon issues of fact (citing cases). Nor is it material that the reasons for the conclusion reached by the court are not given. We are not concerned with the reasoning, but only

with the judgment, and it must be assumed in support of the latter that upon the facts presented to it the state court upon due consideration reached the conclusion that plaintiff's rights had not been violated.'

"Taking the authorities at face value, the only conclusion which can be reached as applied to the instant case is, that the point relied upon by respondent in support of the judgment on the demurrer, is *res adjudicata,* and that it is entirely against his contention.

"In view of the fact that the order of the railroad commission is considered as being legal in itself, the other objections to the information urged by respondent in this court, apparently for the first time 'in any court,' should receive attention.

[6] "In support of the judgment the first specification by respondent has to do with an alleged lack of findings by the railroad commission to the effect that the stages were being operated on the public highway of the state—the argument being that the act under which the commission assumed to make the order in question conferred jurisdiction upon the commission in cases of this character only where stages were being operated for compensation upon public highways. But a reference to the findings discloses the fact that counsel is mistaken in that regard; the finding being 'that the operation now being conducted by respondent . . . its operation as a transportation company as defined in Chapter 213, Statutes of 1917, and amendments thereto,' which is the enabling act and which clearly covers the respondent's objection.

"The second reason assigned by respondent for sustaining the judgment relates to the alleged invalidity of the order of the commission because of its attempt to enjoin the operation of stages 'over regular routes and between fixed termini'; but, as before, in addition to the matter being *res adjudicata,* the enabling act contains language identical with that to which counsel objects. Hence that argument, as well as the argument under respondent's third point to the effect that the charges in the information must follow the findings and the order of the commission, would appear to be not sustainable.

[7] "The objection that the information does not conform to the provisions of section 456 of the Code of Civil

Procedure in that there is no allegation that the order of the commission was 'duly given or made' is likewise untenable for the reason that the information in pleading the determination by the commission set forth the facts conferring the jurisdiction, rather than adopting the shorter procedure of pleading that the order was duly given or made—both of which methods are recognized and at least impliedly authorized by the section to which reference has just been made.

[8] "The sixth point advanced by respondent herein, in substance, is that the charge in the information that the stages were operated for compensation is a conclusion of law and is indefinite and uncertain as to what is meant by the word 'compensation.' The language of the information in that regard follows the language of the statute; hence, under many decisions of our supreme court, the information is unobjectionable in that regard.

[9] "It is urged that the information is faulty in its failure to contain an allegation of service upon defendant of the order of the commission. The charging part of the information is couched substantially in the language of the section of the act which provides for any violation of the provisions of the act and prescribes the penalty therefor. There is nothing in the act itself which requires service upon any person of any order of the commission before it shall become operative."

But, according to the terms of that act, the Railroad Commission is vested with the power and authority to supervise and regulate every transportation company in this state; and it was in accordance with that provision that the Railroad Commission acquired and assumed its jurisdiction to enter the order to which reference has heretofore been made. The general powers of the Railroad Commission are prescribed by the Public Utilities Act, and in section 61 thereof is found the following: "After the conclusion of the hearing, the commission shall make and file its order containing its decision. A copy of such order, certified under the seal of the commission, shall be served upon the corporation or person complained of, or his or its attorney." The opinion in the case of *Clemmons* v. *Railroad Com.*, 173 Cal. 254 [159 Pac. 713], intimates that in a proceeding of the nature of the matter before the commission at the time the order

here under consideration was made, a necessary part of the duty of the commission upon making the order was to comply with the terms of the statute by serving upon the corporation or person complained of, or his or its attorney, a copy of such order, certified under the seal of the commission. The rule appears to be well settled that where an act not before subject to punishment is declared penal, the mode pointed out for the prosecution of the violators of the act must be strictly pursued. (Wharton's Criminal Pleading and Practice, sec. 230, and cases there cited.)

The alleged disobedience by defendant of the order of the Railroad Commission is in the nature of a contempt. Affidavits in a contempt proceeding constitute the complaint. Such proceedings are of a criminal nature and nothing may be indulged in favor of their validity. In the absence of a statement of facts in the affidavit showing in themselves that a contempt has been committed, the court is without jurisdiction. In order that one may be punished for contempt because of the violation of an order of court, it is essential that such person either have actual notice of the making of the order or that personal service of the order be had upon him prior to the time that he is charged with its violation. The failure to charge either such previous knowledge or previous service of the order constitutes a fatal defect in the proceedings and deprives the court of jurisdiction. (*Frowley* v. *Superior Court*, 158 Cal. 220 [110 Pac. 817]; *Selowsky* v. *Superior Court of Napa County*, 180 Cal. 404 [181 Pac. 652]; *Johnson* v. *Superior Court*, 63 Cal. 580; *Hennessy* v. *Nicol*, 105 Cal. 142 [38 Pac. 649].)

In the case of *Selowsky* v. *Superior Court of Napa County*, 180 Cal. 404 [181 Pac. 652], it is said: "That a proceeding to punish for contempt is criminal in character and the affidavit which is made the basis of the proceeding is the counterpart of the complaint in a criminal action." (Citing cases.)

Such being the law with reference to contempt proceedings, it would appear that in this matter an allegation of service upon the defendant of a certified copy of the order of the commission prior to the date of the alleged disobedience of such order is absolutely essential to the maintenance of the action against him. It is a part of the

foundation of the statement of the offense, and without proof of such service the court is without jurisdiction.

There would seem to be no escape from the conclusion that the correctness of the order of the Railroad Commission has already been determined by the supreme court. Such being the case, it afforded a sound basis for the issuance herein of the complaint and filing of the information against defendant. But for the sole reason that the information as filed is fatally defective, as herein pointed out, it is ordered that the judgment be and the same is affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 26, 1924.